

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEON C. COBB,

     Petitioner,

v.                            Civil Action No. 3:15CV214

HAROLD W. CLARKE,

     Respondent.

### MEMORANDUM OPINION

Deon C. Cobb, a Virginia inmate proceeding pro se, submitted a 28 U.S.C. § 2254 petition ("§ 2254 Petition," ECF No. 1) challenging his 2011 convictions in the Circuit Court of the City of Chesapeake ("Circuit Court"). Cobb argues entitlement to relief on the following grounds:

Claim One:    "Insufficient evidence[.]  Detective stated in my interview that he obtained a search warrant to get a copy of my text messages.  During my trial I ask my lawyers to get a copy of the search warrant and they said there wasn't one. Evidence shouldn't have been admitted into evidence.  This is a violation of my 4th [and] 5th Amendments." (§ 2254 Pet. 6.)[1]

Claim Two:    Counsel rendered ineffective assistance during trial when he failed to object to the admission of a text message as "inadmissible hearsay" and under "the best evidence rule," thereby precluding appellate review of its admission. (Id. at 8.)

---

[1] The Court corrects the spelling and capitalization in the quotations from Cobb's submissions.

Claim Three:    "Violation of my 6th Amendment[.]  .  .  .   [T]wo
                jurors should have been dismissed."  (Id. at 9.)

Claim Four:     "Violation of my 5th Amendment Rights[.]"  At the
                police station, detectives "said I wasn't under
                arrest, but I was locked in the room and they
                said I could've left.  How could I.   I was being
                held against my will and I wasn't Mirandize[d]
                until later."  (Id. at 11.)

Respondent[2] has moved to dismiss the action on the grounds that

Claims One, Three, and Four are defaulted and that Claim Two

lacks merit.   For the reasons that follow, Respondent's Motion

to Dismiss will be granted in part and denied in part.

## I.   Procedural History

After a jury trial, the Circuit Court convicted Cobb of

attempted robbery, murder, two counts of use of a firearm in the

commission of a felony, and conspiracy to commit robbery.

Commonwealth v. Cobb, Nos. CR11-520-00 through -04, at 1 (Va.

Cir. Ct. Aug. 22, 2012).   The Circuit Court sentenced Cobb to

thirty-four years of incarceration.   Id. at 2.

Cobb raised the following two claims on appeal:

> 1) THE COURT ERRED in denying the defendant's
> motion to strike and in affirming the jury's
> verdict of guilt as the evidence was not
> sufficient to find that the defendant acted in

---

[2]    Counsel for Respondent notes that Cobb named Keen
Mountain Correctional Center as Respondent; however, Harold W.
Clarke, Director of the Virginia Department of Corrections, is
the proper respondent.    (Mot. Dismiss 1 n.1, ECF No. 5.)
Accordingly, the Court substitutes Clarke as the Respondent in
this action.

> concert with the co-defendant to rob the
> victim . . . .
>
> 2) The COURT ERRED also in admitting into
> evidence over the defense objection the text
> messages from the number 419-0926 as this was
> barred by the best evidence rule.

Petition for Appeal 13, Cobb v. Commonwealth, No. 1526-12-1, at

1 (Va. Ct. App. filed Dec. 21, 2013). The Court of Appeals of

Virginia affirmed the Circuit Court's judgment. Cobb v.

Commonwealth, No. 1526-12-1, 2013 WL 5744363, at *8 (Va. Ct.

App. Oct. 22, 2013). Thereafter, the Supreme Court of Virginia

refused Cobb's petition for appeal. Cobb v. Commonwealth,

No. 131827, at 1 (Va. Mar. 31, 2014).

Cobb indicates on his § 2254 Petition that he filed no

further challenge to his convictions and sentence. (§ 2254 Pet.

¶¶ 10-11.) Nevertheless, in the section asking whether or not

each claim has been appealed to the highest state court, Cobb

also indicates, "[b]efore I left the jail, a jailhouse lawyer

filed a habeas corpus before I even appealed my convictions. So

I wasn't able to file a second habeas." (Id. ¶ 11(e).) The

record demonstrates that Cobb indeed filed a petition for a writ

of habeas corpus in the Circuit Court, during the pendency of

his direct appeal. See Cobb v. Sheriff, No. CL13-216, at 1-8

(Va. Cir. Ct. Oct. 7, 2013). In that petition, Cobb argued that

"[c]ounsel was ineffective in his failure to allow the

petitioner to testify after the petitioner instructed such

3

counsel that he wanted to do so" and "[c]ounsel was ineffective for failure to call witnesses that were present and ready to testify."  Id. at 2.  The Circuit Court addressed Cobb's claims on the merits and denied the habeas petition.  Id. at 5-7.  Cobb filed no appeal.

## II.  Analysis

### A.  Exhaustion and Procedural Default (Claims One, Three, and Four)

State exhaustion "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)).  The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).  Exhaustion has two aspects.  First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief.  See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies

4

available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v.

5

*Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine
provides that "[i]f a state court clearly and expressly bases
its dismissal of a habeas petitioner's claim on a state
procedural rule, and that procedural rule provides an
independent and adequate ground for the dismissal, the habeas
petitioner has procedurally defaulted his federal habeas claim."
Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).
A federal habeas petitioner also procedurally defaults claims
when he or she "fails to exhaust available state remedies and
'the court to which the petitioner would be required to present
his claims in order to meet the exhaustion requirement would now
find the claims procedurally barred.'" Id. (quoting Coleman,
501 U.S. at 735 n.1).³ The burden of pleading and proving that
a claim is procedurally defaulted rests with the state. Jones
v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010)
(citing cases). Absent a showing of cause and prejudice or a
fundamental miscarriage of justice, this Court cannot review the
merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255,
262 (1989).

---

³ Under these circumstances, even though the claim has not
been fairly presented to the Supreme Court of Virginia, the
exhaustion requirement is "technically met." Hedrick v. True,
443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland,
518 U.S. 152, 161-62 (1996)).

Cobb failed to raise Claims One,[4] Three, or Four in the state courts. If Cobb now attempted to present his claims to the Supreme Court of Virginia, that court would find them procedurally defaulted and time-barred pursuant to Section 8.01-654(A)(2) and 8.01-654(B)(2) of the Virginia Code. Both Virginia's statute of limitations for habeas actions and successive petition bars are adequate and independent procedural rules when so applied. See George v. Angelone, 100 F.3d 353, 363-64 (4th Cir. 1996); Sparrow v. Dir. Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006).

In his § 2254 Petition, Cobb suggests that the jailhouse lawyer failed to raise these claims in his state habeas petition. Cobb filed his state habeas petition pro se, and was solely responsible for raising any claim he wished to pursue. A mistake of another inmate fails to serve as cause for his default.

For the first time in his Traverse, Cobb suggests that his counsel is the cause for the default of his claims because he

---

[4] Cobb indicates that he raised Claim One on direct appeal. (See § 2254 Pet. 6(c).) He did not. On direct appeal he challenged the admission of text messages on state evidentiary law grounds, ie., under hearsay and the best evidence rule. (See supra Part A.) Cobb raised no constitutional challenge to the admission of the texts. In his § 2254 Petition, he now challenges the admission of the texts as a violation of his Fourth and Fifth Amendment rights, an entirely different claim than his state law claim.

failed to raise these claims during trial.   (Traverse 5-6, ECF No. 9.)   Respondent wholly fails to address Cobb's assertion of cause with respect to these claims.   Accordingly, the Motion to Dismiss will be denied without prejudice with respect to Claims One, Three, and Four.

### B.   Ineffective Assistance of Counsel (Claim Two)

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).   The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.   Id. at 697.

In Claim Two, Cobb faults counsel for the following:

> In my trial, the evidence listed as Exhibit 23 the photo of a text message found on defendant['s] phone.   Although appellant argues on appeal that the text message in Exhibit 23 was inadmissible hearsay. Counsel did not raise this objection when evidence was introduced at trial.   This is ineffective assistance of counsel, because counsel violated the contemporaneous objection rule.   Which barred the claim from consideration on direct appeal.   The trial court made "no specific rulings" regarding application of the various aspects of the best evidence rule. Therefore there was no ruling for the appeals court to review on appeal.

(§ 2254 Pet. 8.)   Cobb offers no further argument in support of his claim.   As discussed below, Cobb fails to specify the precise ground upon which he desired counsel to object to the admission of Exhibit 23.   However, it is abundantly clear that Cobb fails to demonstrate any deficiency of counsel or resulting prejudice.

As background for Cobb's claim, the Court of Appeals of Virginia aptly summarized Cobb's overwhelming guilt as follows:

> At about 9:30 p.m. on September 14, 2010, Richard Emerle was in a room at the Budget Lodge Motel in Chesapeake with Conell Darden and another individual. After receiving a telephone call, Darden advised that he was expecting someone named "Cobb" to arrive at the door of the motel room.   Emerle was seated beside the door.   Emerle answered a knock at the door and admitted appellant, whom Emerle did not know. Appellant and Darden had a brief conversation.   As appellant prepared to leave, Emerle got up to open the door for him.   Appellant said, "That's okay.   I got it."   When appellant turned the door handle, thus unlocking the door, the door was pushed open from the outside.   Two gunmen appeared.

One of the gunmen entered the room and demanded money. Initially, Darden said he did not have any money. When the gunman persisted in his demand, Darden pointed at a dresser drawer and said it was inside. As the gunman turned toward the dresser Darden tried to tackle him. The gun fired, striking Darden in the chest. The gunman and the other armed individual fled from the scene.

The police arrived at the motel room at 9:37 p.m. in response to 911 calls placed by Emerle and appellant. Darden was transported to the hospital for emergency medical treatment, but he died from the gunshot wound he had suffered to his chest.

When the police arrived, appellant was still in the vicinity of the motel room where Darden was shot. During his investigation at the scene, Detective James Thomas examined the cellular telephone that belonged to appellant. At 10:58 p.m. on September 14, 2010, appellant's phone received a text message stating, "[W]ipe that draw off 4 me." Presumably, the "draw" referred to in the message was the dresser drawer where Darden indicated the cash was stored. The message was sent from a device assigned the number 419-0926. As Exhibit 23, the Commonwealth introduced a photograph of appellant's telephone displaying that message.

Video taken by a surveillance camera at the motel showed appellant interacting with two men outside the room where the shooting occurred. When appellant reached the door of the room, he raised his arm. Then, he knocked on the door and was admitted inside.

When initially questioned by the police, appellant said that Tony Tucker had dropped him off at the motel alone and that he was surprised when the gunmen appeared at the door of the motel room.[5] However, after being confronted by the surveillance video and the presence of the text message about the 'draw' on his phone, appellant admitted that Anthony Saunders was the shooter. Appellant claimed that he had not been in contact with Saunders recently.

The device assigned the number 419-0926 was a cellular telephone registered to Saunders' thirteen-year-old son. Saunders often used that phone to

_____

[5] Tucker testified that he did not give Cobb a ride to the motel that night.

communicate by text message with his girlfriend, Shannon Walker, and others.

Records of Verizon Wireless telephone company, the service provider for 419-0926, demonstrated that on September 13, 2010, there were eight calls between appellant's phone and 419-0926. There were thirteen calls between the two phone numbers on September 14, 2010, and one call on September 15, 2010.

The Commonwealth also introduced, as Exhibit 21, text messaging detail records of Verizon Wireless relating to 419-0926. Monica Harper, the records custodian for Verizon Wireless, testified regarding text messages sent from 419-0926 on September 14 through September 15, 2010. Messages conveyed that the user of 419-0926 was planning to obtain some money and was trying to recruit someone to do a "sting" with him. There were messages from the evening before the shooting that the user of 419-0926 was at "deon's" home. After the shooting of Darden occurred, the user of 419-0926 sent text messages to Walker expressing desperation and affection, and also that he was about to throw away his phone and go into hiding. On the day after the shooting, the user of 419-0926 sent text messages to Walker stating that no one could identify him and that "nobody knew me but Deon." He further instructed someone to call "Deon's phone" to see who answered. The user of 419-0926 later indicated in a text message that the police had "Deon's" phone and that "Deon" might have talked to the police.

Saunders was not arrested until about six months after Darden's killing. Detective Thomas testified at a pretrial motions hearing that the police did not recover Saunders' telephone. In a separate trial, Saunders was convicted of the murder of Darden, attempted robbery, conspiracy, and two counts of using a firearm in the commission of a felony.

Cobb v. Commonwealth, No. 1526-12-1, 2013 WL 5744363, at *1-2

(Va. Ct. App. Oct. 22, 2013).

On direct appeal, Cobb raised a challenge to the admissibility of the text messages arguing that they were hearsay and barred by the best evidence rule. Cobb argued that

"the appropriate way to establish the content of the messages would have been either through the introduction of the cell phone belonging to the number 419-0926, or through photographs of those messages on that phone" instead of through Verizon Wireless records.  Petition for Appeal 19-20, Cobb, No. 1526-12-1 (Va. Ct. App. filed Dec. 21, 2012).

The Court of Appeals of Virginia extensively examined and rejected this argument as follows:

> Appellant filed a pretrial motion in limine to exclude evidence of cell phone text messages received by or recorded on his telephone, as well as any documentary evidence relating to such text messages. In his motion, appellant contended the evidence was inadmissible hearsay and was barred by the best evidence rule.   At a hearing upon his motion, conducted on August 16, 2011, Detective Thomas testified regarding the contents of two text messages he retrieved from appellant's phone and photographed, one of which was the message regarding the "draw." Initially, appellant argued that "the two text messages that Detective Thomas testified about are the specific items of evidence that we're asking the Court to exclude."  He argued the messages were hearsay and did not fall within the exception to the hearsay rule regarding statements made by co-conspirators.    The Commonwealth countered that the text messages were admissible under either the co-conspirator or declaration against penal interest exception to the hearsay rule.  The prosecutor then said she was unsure of whether, at trial, she would try to introduce appellant's telephone displaying the messages or the photographs of the messages displayed on the telephone.    Defense counsel then refocused her argument, stating, "I don't have any problem with the pictures being used in lieu of the cell phone.  It was only the other records independently obtained from the phone company that we would have objected to."   The trial court asked, "So you're not objecting to the photographs?"  Defense counsel said she was not.  At a

subsequent hearing, the trial court overruled the motion in limine, citing the declaration against penal interest exception to the hearsay rule.

At trial, the Commonwealth sought to introduce Exhibit 21, the Verizon Wireless records of text messages made and received by 419-0926 on September 14 and 15, 2010. Harper testified that Exhibit 21 was an accurate copy of the company's records reflecting those messages. Appellant objected to Exhibit 21, stating that the issue addressed at the pretrial hearing was the admissibility of the "two specific text messages," and "not the remainder of the text messages that the Commonwealth is intending here to offer again today." Appellant argued the Commonwealth had not laid an adequate foundation through Harper for admission of the documents as business records. He further contended the records were not admissible under either the co-conspirator statement or declaration against penal interest exception to the hearsay rule and that the best evidence rule barred admission of the records. The trial court agreed that the Commonwealth had not established an adequate foundation through Harper, but that that could be remedied since Harper was still available as a witness. . . .

. . . .

The Commonwealth recalled Harper to the witness stand. In response to questioning by the prosecutor, Harper testified that the records contained in Exhibit 21 were kept in the normal course of business, were relied upon by Verizon Wireless in the transaction of business, and were created instantaneously with the text messages themselves. Exhibit 21 then was introduced without any objection other than those appellant previously had raised.

Subsequently, when the Commonwealth sought to introduce Exhibit 23, appellant stated he had "no objection other than the objections previously made at the pretrial motions in August."

. . . .

Appellant contends the trial court committed reversible error by admitting Exhibit 21 into evidence because the records were inadmissible hearsay and barred by the best evidence rule. 2[⁶]

---

⁶ Appellant's argument on best evidence grounds does not encompass an objection to Exhibit 23, the

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988).

### A.   Best Evidence Rule

Appellant argues the trial court erred in rejecting his contention that the best evidence rule barred admission of Exhibit 21. . . .

Appellant's trial occurred prior to the adoption of the Virginia Rules of Evidence, which became effective on July 1, 2012. Therefore, the admissibility of evidence in this case was governed by the common law rules of evidence. See Brown v.

---

photograph of the text message as found by the police on appellant's phone, "[W]ipe that draw off 4 me." Appellant states in his brief that a proper way to establish the content of text messages is "through photographs of those messages on that phone," precisely what Exhibit 23 is. Moreover, appellant conceded at oral argument in this Court that he had no valid objection to Exhibit 23 based upon the best evidence rule.

Although appellant argues on appeal that the text message in Exhibit 23 was inadmissible hearsay, appellant did not raise this objection when the evidence was introduced at trial. Instead, appellant relied upon the argument raised at the August 2011 pretrial hearing. Although he made statements to the contrary at trial during argument regarding the admissibility of Exhibit 21, at the pretrial hearing appellant said he was challenging the admissibility only of "records independently obtained from the phone company," not the admissibility of photographs Thomas took of text messages on appellant's telephone. Thus the record does not reflect that appellant preserved a hearsay objection to Exhibit 23 because he did not, at the time the evidence was offered, raise or renew a hearsay objection to that same evidence. See Rule SA: 18; Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) ("To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made."). Accordingly, we do not consider such a contention on appeal.

<u>Commonwealth</u>, 54 Va. App. 107, 113, 676 S.E.2d 326, 329 (2009).

> In Virginia, the best evidence rule provides that "where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted." <u>Randolph v. Commonwealth</u>, 145 Va. 883, 889, 134 S.E. 544, 546 (1926); <u>Butts v. Commonwealth</u>, 145 Va. 800, 816, 133 S.E. 764, 769 (1926). Thus, if the purpose is to prove the truth of the contents of a writing, the primary evidence must be produced, if available.

<u>Bradshaw v. Commonwealth</u>, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993). The best evidence rule applies only to writings. <u>See</u> <u>Midkiff v. Commonwealth</u>, 280 Va. 216, 219, 694 S.E.2d 576, 577 (2010) (finding best evidence rule did not bar introduction of photographs and video recordings copied from the hard drive of defendant's computer); <u>Brown</u>, 54 Va. App. at 120, 676 S.E.2d at 332 (best evidence rule did not bar testimony regarding the contents of a surveillance camera videotape).

Appellant claims that the display of text messages on the actual cellular device assigned the number 419-0926 was the writing which the Commonwealth sought to prove at trial and that in the unexplained absence of the device or photographs of the text messages displayed, secondary evidence was inadmissible to prove the content of text messages sent or received by the device. A writing has been defined by the General Assembly as "any representation of words, letters, symbols, numbers, or figures, whether (i) printed or inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in a perceivable form and whether an electronic signature . . . is or is not affixed." Code § 1-257.

. . . We assume without deciding that a text message qualifies as a "writing."

Nonetheless, under the best evidence rule, where the admitted evidence qualifies as an original of the writing in question "application of the best evidence

rule is unnecessary." <u>Winston v. Commonwealth</u>, 16 Va. App. 901, 904, 434 S.E.2d 4, 5 (1993). Courts have applied the concept of "duplicate originals" to mechanically reproduced copies. <u>See</u>, <u>e.g.</u>, <u>Burton v. F. A Seifert & Co.</u>, 108 Va. 338, 352-53, 61 S.E. 933, 939 (1908) (applying the duplicate original principle to "letter-press copies"); <u>Chesapeake & O. R. Co. v. F. W. Stock & Sons</u>, 104 Va. 97, 101, 51 S.E. 161, 162 (1905) (recognizing that a "carbon copy" may be regarded as a "duplicate original"). Under this view, "[m]any of the documents that we commonly refer to as 'copies' are in fact 'duplicate originals,' and are treated as 'originals' for purposes of the best evidence rule." Charles Friend & Kent Sinclair, <u>The Law of Evidence in Virginia</u> 18-4[a], at 1195 (7th ed. 2012).

Neither this Court nor the Supreme Court of Virginia has decided whether the printed record of an exchange of text messages is an original or duplicate original of the messages. Nonetheless, we have observed that "[t]he potentially limitless application of computer technology to evidentiary questions will continually require legal adaptation." <u>Penny v. Commonwealth</u>, 6 Va. App. 494, 499, 370 S.E.2d 314, 317 (1988).

. . . .

We conclude that, under the law applicable at the time of appellant's trial, the Verizon Wireless records of the text messages were originals or duplicate originals for purposes of the best evidence rule. Harper testified that the text messages were recorded instantaneously by the company at the time they were created. Thus, the printout of the company's records of the text messages was an original writing, just as mechanically reproduced or photocopied documents are considered originals. Therefore, the trial court did not err in finding that the best evidence rule did not bar the introduction of Exhibit 21.

<u>Cobb</u>, 2013 WL 5744363, at *2-5.[7] While counsel did not advance

an objection to Exhibit 23 during trial, and thereby failed to

---

[7] The Court of Appeals of Virginia also analyzed Cobb's argument that Exhibit 21 was inadmissible hearsay. The Court

preserve the objection for appeal, as discussed below, Cobb demonstrates neither deficiency nor resulting prejudice from counsel's omission.

On appeal, counsel argued that to satisfy the best evidence rule and hearsay concerns, the Commonwealth should have introduced the actual cell phone or photographs of the phone. To the extent Cobb adopts this argument with respect to Exhibit 23, that exhibit was indeed a photograph of the phone. The Court then presumes that Cobb argues that the Commonwealth was required to admit his actual phone during trial in order to introduce the text message into evidence. Cobb fails to demonstrate that an objection to Exhibit 23 on best evidence grounds or as hearsay would have successfully prevented the admission of the exhibit. To the contrary, counsel's objection to Exhibit 23 would have been overruled by the Circuit Court for similar reasons as the Court allowed the introduction of Exhibit 21—Exhibit 23 was a duplicate original of the actual message on the phone. Moreover, the content of the text, "Wipe that draw off 4 me" was admissible under several exceptions to the hearsay rule including as a co-conspirator's statement that provides evidence of the existence of a conspiracy, see Rabeiro v. Commonwealth, 389 S.E.2d 731, 731-32 (Va. Ct. App. 1990), and a

found that it was admissible pursuant to the business record exception rule, an exception not relevant to Exhibit 23. Cobb, 2013 WL 5744363, at *5-7.

17

declaration against penal interest by Cobb's co-conspirator. See Randolph v. Commonwealth, 482 S.E.2d 101, 104-05 (Va. Ct. App. 1997).

Second, even if counsel had objected to the admission of this text message during trial, the Court of Appeals would have rejected Cobb's challenge to its admission for the same reasons as the Circuit Court. As the Court of Appeals of Virginia explained in its discussion about the admissibility of Exhibit 21, a paper record of the text messages maintained by Verizon Wireless, the photographs of the text messages found on Cobb's phone were duplicate originals of the actual text messages under the best evidence rule. This analysis applies with equal weight to Exhibit 23. Cobb fails to demonstrate that, if counsel had objected to the admission of Exhibit 23 during trial on these grounds, the Court of Appeals of Virginia would have found the text message inadmissible. Moreover, as Respondent aptly points out, the content of Exhibit 23 was also admitted in Exhibit 21— the Verizon Wireless records of the text messages. Thus, the content of the text message in Exhibit 23 would have been admitted into evidence even if Exhibit 23 had not been. Cobb wholly fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to raise this meritless objection. Accordingly, Claim Two will be dismissed.

### III. Conclusion

Accordingly, the Motion to Dismiss (ECF No. 5) will be granted with respect to Claim Two and will be denied without prejudice with respect to Claims One, Three, and Four. Claim Two will be dismissed. Respondent will be directed to file, within thirty (30) days of the date of entry hereof, a further response, which may raise any procedural defenses and must address the merits of Cobb's claims.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Cobb and counsel for Respondent.

It is so ORDERED.

/s/   *Ref*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: *November 16, 2015*