IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



DEON C. COBB,

     Petitioner,

v.                                Civil Action No. 3:15CV214

HAROLD W. CLARKE,

     Respondent.

## MEMORANDUM OPINION

Deon C. Cobb, a Virginia inmate proceeding <u>pro</u> <u>se</u>, submitted a 28 U.S.C. § 2254 petition ("§ 2254 Petition," ECF No. 1) challenging his 2011 convictions in the Circuit Court of the City of Chesapeake (hereinafter "Circuit Court"). By Memorandum Opinion and Order entered on November 16, 2015, the Court granted in part and denied in part Respondent's Motion to Dismiss. <u>Cobb v. Clarke</u>, No. 3:15CV214, 2015 WL 7283125, at *8 (E.D. Va. Nov. 16, 2015); (ECF Nos. 14-15.) The Court dismissed Claim Two, and directed Respondent to file a further response with respect to Claims One, Three, and Four. Respondent has filed a Supplemental Brief in Support of the Motion to Dismiss (ECF No. 16). Cobb has responded. (ECF Nos. 17-18.) For the reasons stated below, the Motion to Dismiss will be granted.

## I. Procedural History

After a jury trial, the Circuit Court convicted Cobb of attempted robbery, murder, two counts of use of a firearm in the

commission of a felony, and conspiracy to commit robbery. Commonwealth v. Cobb, Nos. CR11-520-00 through -04, at 1 (Va. Cir. Ct. Aug. 22, 2012). The Circuit Court sentenced Cobb to thirty-four years of incarceration. Id. at 2.

Cobb raised the following two claims on appeal:

> 1) THE COURT ERRED in denying the defendant's motion to strike and in affirming the jury's verdict of guilt as the evidence was not sufficient to find that the defendant acted in concert with the co-defendant to rob the victim . . . .

> 2) The COURT ERRED also in admitting into evidence over the defense objection the text messages from the number 419-0926 as this was barred by the best evidence rule.

Petition for Appeal 13, Cobb v. Commonwealth, No. 1526-12-1, at 1 (Va. Ct. App. filed Dec. 21, 2013). The Court of Appeals of Virginia affirmed the Circuit Court's judgment. Cobb v. Commonwealth, No. 1526-12-1, 2013 WL 5744363, at *8 (Va. Ct. App. Oct. 22, 2013). Thereafter, the Supreme Court of Virginia refused Cobb's petition for appeal. Cobb v. Commonwealth, No. 131827, at 1 (Va. Mar. 31, 2014).

Cobb indicates on his § 2254 Petition that he filed no further challenge to his convictions and sentence. (§ 2254 Pet. ¶¶ 10-11.) Nevertheless, in the section asking whether or not each claim has been appealed to the highest state court, Cobb also indicates, "[b]efore I left the jail, a jailhouse lawyer filed a habeas corpus before I even appealed my

convictions.  So I wasn't able to file a second habeas."  (<u>Id.</u>
¶ 11(e).)    The  record  demonstrates  that  Cobb  indeed  filed  a
petition  for  a  writ  of  habeas  corpus  in  the  Circuit  Court,
during  the  pendency  of  his  direct  appeal.    <u>See</u>  <u>Cobb v. Sheriff</u>,
No.  CL13-216,  at  1-8  (Va.  Cir.  Ct.  Oct.  7,  2013).    In  that
petition,  Cobb  argued  that  "[c]ounsel  was  ineffective  in  his
failure  to  allow  the  petitioner  to  testify  after  the  petitioner
instructed  such  counsel  that  he  wanted  to  do  so"  and  "[c]ounsel
was  ineffective  for  failure  to  call  witnesses  that  were  present
and  ready  to  testify."    <u>Id.</u>  at  2.    The  Circuit  Court  addressed
Cobb's  claims  on  the  merits  and  denied  the  habeas  petition.    <u>Id.</u>
at  5-7.  Cobb  filed  no  appeal.

Thereafter,  Cobb  filed  the  present  § 2254  Petition,  in
which the following claims remain:

Claim One:      "Insufficient evidence[.]  Detective stated in my
                interview that he obtained a search warrant to
                get  a  copy  of  my  text  messages.    During  my
                trial  I  ask  my  lawyers  to  get  a  copy  of  the
                search warrant and they said there wasn't one.
                Evidence   shouldn't   have   been   admitted   into
                evidence.    This  is  a  violation  of  my  4th  [and]
                5th Amendments."  (§ 2254 Pet. 6.)[1]

Claim Three:    "Violation  of  my  6th  Amendment[.]  .  .  .  [T]wo
                jurors should have been dismissed."  (<u>Id.</u> at 9.)

Claim Four:     "Violation  of  my  5th  Amendment  Rights[.]"    At  the
                police  station,  detectives  "said  I  wasn't  under
                arrest,  but  I  was  locked  in  the  room  and  they

---

[1]    The   Court   corrects   the   spelling,   punctuation,   and
capitalization in the quotations from Cobb's submissions.

> said I could've left. How could I. I was being
> held against my will and I wasn't Mirandize[d]
> until later." (Id. at 11.)

As explained below, these claims are defaulted and Cobb fails to demonstrate cause to excuse his default.

## II.  EXHAUSTION AND PROCEDURAL DEFAULT

### A.  Applicable Law

State exhaustion "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriquez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

4

under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine

provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

6

### B.   Cobb's Assertions Of Cause

Cobb failed to raise Claims One,[3] Three, or Four in the state courts.   If Cobb now attempted to present his claims to the Supreme Court of Virginia, that court would find them procedurally defaulted and time-barred pursuant to Section 8.01-654(A)(2) and 8.01-654(B)(2) of the Virginia Code.   Both Virginia's statute of limitations for habeas actions and successive petition bars are adequate and independent procedural rules when so applied.   See George v. Angelone, 100 F.3d 353, 363-64 (4th Cir. 1996); Sparrow v. Dir. Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006).

In his § 2254 Petition, Cobb suggests that the jailhouse lawyer failed to raise these claims in his state habeas petition.   Cobb filed his state habeas petition pro se, and was solely responsible for raising any claim he wished to pursue.   A mistake of another inmate fails to serve as cause for his default.

---

[3] Cobb indicates that he raised Claim One on direct appeal. (See § 2254 Pet. 7(c).)   He did not.   On direct appeal he challenged the admission of text messages on state evidentiary law grounds, ie., under hearsay and the best evidence rule. (See supra Part A.)   Cobb raised no constitutional challenge to the admission of the texts.   In his § 2254 Petition, he now challenges the admission of the texts as a violation of his Fourth and Fifth Amendment rights, an entirely different claim than his state law claim.

For the first time in his Traverse, Cobb suggests that his counsel is the cause for the default of his claims because he failed to raise these claims during trial.   (Traverse 5-6, ECF No. 9.)   Instead of providing support for this contention, Cobb provides little more than a recitation of the legal standard for procedural default.   Nevertheless, the Court directed Respondent to respond to Cobb's assertion that counsel was the cause for the default of Claims One, Three, and Four.

The Court acknowledges the difficulty with addressing this assertion of cause, because Cobb faults counsel for failing to advance the claims during trial, but provides little to no supporting argument for why this would excuse the default.   Cobb defaulted his claims because he failed to raise them before the Supreme Court of Virginia, not because counsel failed to raise them during trial.[4]   Moreover, the record establishes that counsel did pursue Claims Three and Four during trial.   For those claims, Cobb seemingly argues that counsel failed to pursue the claims as vigorously as Cobb would have liked, the Circuit Court erred or, for Claim Four, that appellate counsel

---

[4] The United States Supreme Court's decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012) further muddles the analysis when an inmate alleges that counsel serves as the cause for a default of a claim.   See id. at 1321 (Scalia, J., dissenting) (observing that as "a consequence of today's decision the States will always be forced to litigate in federal habeas, for all defaulted ineffective-assistance-of-trial-counsel claims (and who knows what other claims) . . . the validity of the defaulted claim (where collateral-review counsel was not appointed)").

should have raised the issue on appeal. (See Second Traverse 2, ECF No. 17.)

The Court also notes that Cobb's claims are ever-changing throughout his submissions to the Court. Cobb's Claims One and Four in particular seem to evolve to raise new issues in response to the Court's Memorandum Opinion denying in part the Motion to Dismiss and Respondent's Supplemental briefing. The Court is wary that Cobb will learn from this Court's generous construction of his vague claims and will supply new argument to correct the deficiencies identified by the Court in presenting those claims on appeal. Nevertheless, as explained below, because Cobb's ineffective assistance claims clearly lack merit, they fail to serve as the cause for the default of his claims.[5]

### III. ANALYSIS

#### A.    Standard For Ineffective Assistance

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington,

---

[5] To the extent that Cobb now attempts to raise substantive claims of ineffective assistance of counsel with regard to his allegations in Claims One, Three, and Four (see Second Traverse 2), these claims lack merit for the same reason they fail to serve as cause for Cobb's default of these claims: Cobb fails to demonstrate that counsel performed deficiently or that he was prejudiced.

9

466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689).  The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.  Id. at 697.

As explained below, Cobb fails to demonstrate any deficiency of counsel or resulting prejudice.

B.   Claim One

In Claim One, as stated in his § 2254 Petition, Cobb argues:   "Insufficient evidence.   Detective stated in my interview that he obtained a search warrant to get a copy of my text messages.   During my trial, I ask my lawyers to get a copy of the search warrant and they said there wasn't one. Evidence shouldn't have been admitted into evidence.  This is a violation of my 4th [and] 5th Amendments."   (§ 2254 Pet. 6.)

10

This claim appears to be the same in his Traverse.  After the Court directed Respondent to address ineffective assistance of counsel as the cause for his default of Claim One, in his "Points and Authorities in Support of Traverse," Cobb appears to merge Claims One and Four.  Cobb characterizes this claim as follows:

> Ground One of the petition alleges, in sum, that Petitioner's Fourth and Fifth Amendment rights were violated by Thomas continuing to interrogate petitioner after he had made at least three requests to obtain counsel, during a long session that is not taped . . . .  Although the Commonwealth argues . . . (the seizure of text messages did not implicate the Fifth Amendment because Cobb was not asked to say or do anything), the record which includes [Detective] Thomas's trial testimony certainly re[flect] that petitioner was asked to identify Saunders as the shooter, he was asked to surrender his cell phone . . . , and as customary was asked to make statements.

(Points and Auth. 3.)  To the extent Cobb challenges counsel's performance with regard to his questioning on September 19, 2010 at the police station, this argument will be discussed with Claim Four, which raises the challenge to his purported interrogation.  For the remainder of Claim One, the Court construes Cobb to fault counsel for failing to object to the admissibility of the text messages.

Because Cobb's claim is terse and provides little detail, the Court first summarizes the evidence against Cobb as

11

background. The Court of Appeals of Virginia aptly summarized

Cobb's overwhelming guilt as follows:

> At about 9:30 p.m. on September 14, 2010, Richard Emerle was in a room at the Budget Lodge Motel in Chesapeake with Conell Darden and another individual. After receiving a telephone call, Darden advised that he was expecting someone named "Cobb" to arrive at the door of the motel room. Emerle was seated beside the door. Emerle answered a knock at the door and admitted appellant, whom Emerle did not know. Appellant and Darden had a brief conversation. As appellant prepared to leave, Emerle got up to open the door for him. Appellant said, "That's okay. I got it." When appellant turned the door handle, thus unlocking the door, the door was pushed open from the outside. Two gunmen appeared.
>
> One of the gunmen entered the room and demanded money. Initially, Darden said he did not have any money. When the gunman persisted in his demand, Darden pointed at a dresser drawer and said it was inside. As the gunman turned toward the dresser Darden tried to tackle him. The gun fired, striking Darden in the chest. The gunman and the other armed individual fled from the scene.
>
> The police arrived at the motel room at 9:37 p.m. in response to 911 calls placed by Emerle and appellant. Darden was transported to the hospital for emergency medical treatment, but he died from the gunshot wound he had suffered to his chest.
>
> When the police arrived, appellant was still in the vicinity of the motel room where Darden was shot. During his investigation at the scene, Detective James Thomas examined the cellular telephone that belonged to appellant. At 10:58 p.m. on September 14, 2010, appellant's phone received a text message stating, "[W]ipe that draw off 4 me." Presumably, the "draw" referred to in the message was the dresser drawer where Darden indicated the cash was stored. The message was sent from a device assigned the number 419-0926. As Exhibit 23, the Commonwealth introduced a photograph of appellant's telephone displaying that message.
>
> Video taken by a surveillance camera at the motel showed appellant interacting with two men outside the room where the shooting occurred. When appellant

12

reached the door of the room, he raised his arm. Then, he knocked on the door and was admitted inside.

When initially questioned by the police, appellant said that Tony Tucker had dropped him off at the motel alone and that he was surprised when the gunmen appeared at the door of the motel room.[6] However, after being confronted by the surveillance video and the presence of the text message about the 'draw' on his phone, appellant admitted that Anthony Saunders was the shooter. Appellant claimed that he had not been in contact with Saunders recently.

The device assigned the number 419-0926 was a cellular telephone registered to Saunders' thirteen-year-old son. Saunders often used that phone to communicate by text message with his girlfriend, Shannon Walker, and others.

Records of Verizon Wireless telephone company, the service provider for 419-0926, demonstrated that on September 13, 2010, there were eight calls between appellant's phone and 419-0926. There were thirteen calls between the two phone numbers on September 14, 2010, and one call on September 15, 2010.

The Commonwealth also introduced, as Exhibit 21, text messaging detail records of Verizon Wireless relating to 419-0926. Monica Harper, the records custodian for Verizon Wireless, testified regarding text messages sent from 419-0926 on September 14 through September 15, 2010. Messages conveyed that the user of 419-0926 was planning to obtain some money and was trying to recruit someone to do a "sting" with him. There were messages from the evening before the shooting that the user of 419-0926 was at "deon's" home. After the shooting of Darden occurred, the user of 419-0926 sent text messages to Walker expressing desperation and affection, and also that he was about to throw away his phone and go into hiding. On the day after the shooting, the user of 419-0926 sent text messages to Walker stating that no one could identify him and that "nobody knew me but Deon." He further instructed someone to call "Deon's phone" to see who answered. The user of 419-0926 later indicated in a text message that the police had "Deon's" phone and that "Deon" might have talked to the police.

---

[6] Tucker testified that he did not give Cobb a ride to the motel that night.

Saunders was not arrested until about six months after Darden's killing. Detective Thomas testified at a pretrial motions hearing that the police did not recover Saunders' telephone. In a separate trial, Saunders was convicted of the murder of Darden, attempted robbery, conspiracy, and two counts of using a firearm in the commission of a felony.

Cobb v. Commonwealth, No. 1526-12-1, 2013 WL 5744363, at *1-2 (Va. Ct. App. Oct. 22, 2013).

Here, in Claim One, Cobb claims that counsel should have challenged the admissibility of the "cop[ies] of my text messages" on Fourth and Fifth Amendment grounds. (§ 2254 Pet. 6.) Cobb fails to identify what specific challenges under the Fourth or Fifth Amendment counsel should have raised. Two separate sources of the text messages were admitted as three separate exhibits during trial. However, Cobb fails to specify which "copy of [his] text messages" he faults counsel for failing to challenge on Fourth or Fifth Amendment grounds.

### 1. Fourth Amendment Standard

The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses' and thus . . . is a personal right that must be invoked by an individual." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (alteration in original) ("[T]he Fourth Amendment protects people, not places." (citing Katz v. United States, 389 U.S. 347, 351 (1967))). Thus, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an

expectation of privacy in the place searched, and that his expectation is reasonable." Id. (quoting Rakas v. Illinois, 439 U.S. 128, 143-44 & n.12 (1978)). Moreover, the expectation of privacy must have a "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law to understandings that are recognized and permitted by society." Id. (citation omitted). The burden lies with Cobb to show that he has a reasonable expectation of privacy in the place searched. United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992) (citation omitted).

While the Court believes that Cobb intends to challenge the admission of photographs of text messages from his phone, the Court briefly examines each exhibit containing the text messages.

    2.    Exhibit 21

Exhibit 21 was comprised of the records provided by Verizon Wireless and included over one hundred messages sent by Saunders from the phone 419-0926 the day of and the day after the murder including those to Cobb. This exhibit was admitted through the Verizon Wireless records custodian. Cobb, 2013 WL 5744363, at *2. Counsel filed a motion in limine to exclude these records, and objected to their admission on state law grounds. Id. In a lengthy discussion, the Court of Appeals of Virginia found no error in the admission of Exhibit 21. Id. at *4-7. Cobb fails

to explain how the admission of these records violated his Fourth Amendment rights as they were not records that belonged to him or were taken from him without a warrant.  Cobb has no personal expectation of privacy for Saunders's phone records that were obtained from Verizon Wireless.  Counsel cannot be faulted for failing to raise a meritless Fourth Amendment challenge.  Thus, Cobb demonstrates neither deficiency of counsel nor resulting prejudice.

### 3.  Exhibit 7

Similarly, Exhibit 7 was merely a two-page excerpt from Exhibit 21, admitted through the Verizon Wireless records custodian and authenticated by Saunders's fiancé as texts between the two of them.  Cobb, 2013 WL 5744363, at *4 n.2.  As the Court of Appeals of Virginia explained, these records were admissible for the same reason as Exhibit 21.  See id.  Cobb fails to provide any facts indicating why he believes admitting these documents violated his Fourth Amendment rights, as he has no personal expectation of privacy in phone records for a phone that was not his.  Cobb fails to demonstrate that counsel rendered ineffective assistance with regard to the admission of this exhibit.

### 4.  Exhibit 23

Finally, Exhibit 23 was the photograph taken by Detective Thomas of the text message displayed on Cobb's phone.  The text

message was sent by Saunders to Cobb and stated:   "'[W]ipe that
draw off 4 me.'"   Cobb, 2013 WL 5744363, at *1.   Exhibit 23 is
the only evidence of a text message that was obtained from Cobb.
Counsel raised no independent objection during trial to the
admission of Exhibit 23.   In a rambling fashion, in his Points
and Authorities in response to the Respondent's Supplemental
Brief in Support of Motion to Dismiss, Cobb explains that his

> Fourth and Fifth Amendment rights were violated, as a
> result of ineffective assistance of trial counsel.
> Counsel argued on direct appeal that the text message
> in Exhibit 23 was inadmissible hearsay, yet he did not
> raise this objection when the evidence was introduced
> at trial.     Instead, he relied on/upon the argument
> raised at the August 2011 pretrial hearing. . . .
> Thus the record does not reflect that counsel
> preserved a hearsay objection to Exhibit 23 because he
> did not, at the time the evidence was offered, raise
> or renew a hearsay objection to that same evidence.

(Points and Auth. 4-5.)   Cobb seemingly claims that counsel
failed to object to the admission of Exhibit 23 on state law
grounds during trial, and thereby did not preserve the state law
challenge for appeal.   Cobb fails to explain why he believes
this violates the Fourth and Fifth Amendments.

As background, the Court of Appeals of Virginia summarized
any objection or lack thereof to Exhibit 23, as follows:

> Appellant filed a pretrial motion in limine to
> exclude evidence of cell phone text messages received
> by or recorded on his telephone, as well as any
> documentary evidence relating to such text messages.
> In his motion, appellant contended the evidence was
> inadmissible hearsay and was barred by the best
> evidence rule.     At a hearing upon his motion,

17

conducted on August 16, 2011, Detective Thomas
testified regarding the contents of two text messages
he retrieved from appellant's phone and photographed,
one of which was the message regarding the "draw."
Initially, appellant argued that "the two text
messages that Detective Thomas testified about are the
specific items of evidence that we're asking the Court
to exclude."  He argued the messages were hearsay and
did not fall within the exception to the hearsay rule
regarding statements made by co-conspirators.  The
Commonwealth countered that the text messages were
admissible under either the co-conspirator or
declaration against penal interest exception to the
hearsay rule.  The prosecutor then said she was unsure
of whether, at trial, she would try to introduce
appellant's telephone displaying the messages or the
photographs of the messages displayed on the
telephone.  Defense counsel then refocused her
argument, stating, "I don't have any problem with the
pictures being used in lieu of the cell phone.  It was
only the other records independently obtained from the
phone company that we would have objected to."  The
trial court asked, "So you're not objecting to the
photographs?"  Defense counsel said she was not.  At a
subsequent hearing, the trial court overruled the
motion in limine, citing the declaration against penal
interest exception to the hearsay rule.

          . . . .
          Subsequently, [during trial] when the
Commonwealth sought to introduce Exhibit 23, appellant
stated he had "no objection other than the objections
previously made at the pretrial motions in August."

Cobb, 2013 WL 5744363, at *2-3.  In a footnote to the discussion

of the admissibility of Exhibit 21 on best evidence grounds, the

Court of Appeals explained:

          Appellant's argument on best evidence grounds
does not encompass an objection to Exhibit 23, the
photograph of the text message as found by the police
on appellant's phone, "[W]ipe that draw off 4 me."
Appellant states in his brief that a proper way to
establish the content of text messages is "through
photographs of those messages on that phone,"
precisely what Exhibit 23 is.  Moreover, appellant

conceded at oral argument in this Court that he had no
valid objection to Exhibit 23 based upon the best
evidence rule.
    Although appellant argues on appeal that the text
message in Exhibit 23 was inadmissible hearsay,
appellant did not raise this objection when the
evidence was introduced at trial.  Instead, appellant
relied upon the argument raised at the August 2011
pretrial hearing.  Although he made statements to the
contrary at trial during argument regarding the
admissibility of Exhibit 21, at the pretrial hearing
appellant said he was challenging the admissibility
only of "records independently obtained from the phone
company," not the admissibility of photographs Thomas
took of text messages on appellant's telephone.  Thus
the record does not reflect that appellant preserved a
hearsay objection to Exhibit 23 because he did not, at
the time the evidence was offered, raise or renew a
hearsay objection to that same evidence. See Rule 5A:
18; Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347
S.E.2d 167, 168 (1986) ("To be timely, an objection
must be made when the occasion arises -- at the time
the evidence is offered or the statement made.").
Accordingly, we do not consider such a contention on
appeal.

Id. at *4 n.2 (alteration in original).  In the November 17,

2015, Memorandum Opinion and Order that dispensed with Claim Two

of the instant § 2254 Petition, the Court rejected Cobb's

assertion that counsel was ineffective with regard to Exhibit 23

because he failed to object to its admission during trial.  The

Court explained:

    While counsel did not advance an objection to Exhibit
    23 during trial, and thereby failed to preserve the
    objection for appeal, as discussed below, Cobb
    demonstrates neither deficiency nor resulting
    prejudice from counsel's omission.
        On appeal, counsel argued that to satisfy the
    best evidence rule and hearsay concerns, the
    Commonwealth should have introduced the actual cell
    phone or photographs of the phone.  To the extent Cobb

adopts this argument with respect to Exhibit 23, that exhibit was indeed a photograph of the phone. The Court then presumes that Cobb argues that the Commonwealth was required to admit his actual phone during trial in order to introduce the text message into evidence. Cobb fails to demonstrate that an objection to Exhibit 23 on best evidence grounds or as hearsay would have successfully prevented the admission of the exhibit. To the contrary, counsel's objection to Exhibit 23 would have been overruled by the Circuit Court for similar reasons as the Court allowed the introduction of Exhibit 21—Exhibit 23 was a duplicate original of the actual message on the phone. Moreover, the content of the text, "Wipe that draw off 4 me" was admissible under several exceptions to the hearsay rule including as a co-conspirator's statement that provides evidence of the existence of a conspiracy, see Rabeiro v. Commonwealth, 389 S.E.2d 731, 731-32 (Va. Ct. App. 1990), and a declaration against penal interest by Cobb's co-conspirator. See Randolph v. Commonwealth, 482 S.E.2d 101, 104-05 (Va. Ct. App. 1997).

Second, even if counsel had objected to the admission of this text message during trial, the Court of Appeals would have rejected Cobb's challenge to its admission for the same reasons as the Circuit Court. As the Court of Appeals of Virginia explained in its discussion about the admissibility of Exhibit 21, a paper record of the text messages maintained by Verizon Wireless, the photographs of the text messages found on Cobb's phone were duplicate originals of the actual text messages under the best evidence rule. This analysis applies with equal weight to Exhibit 23. Cobb fails to demonstrate that, if counsel had objected to the admission of Exhibit 23 during trial on these grounds, the Court of Appeals of Virginia would have found the text message inadmissible. Moreover, as Respondent aptly points out, the content of Exhibit 23 was also admitted in Exhibit 21— the Verizon Wireless records of the text messages. Thus, the content of the text message in Exhibit 23 would have been admitted into evidence even if Exhibit 23 had not been. Cobb wholly fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to raise this meritless objection.

Cobb v. Clarke, No. 3:15CV214, 2015 WL 7283125, at *7-8 (E.D.
Va. Nov. 17, 2015). Thus, to the extent Cobb again faults
counsel for failing to preserve for appeal the state law
challenge to Exhibit 23, this claim lacks merit.

Similarly, the Court also rejects Cobb's challenge to the
admission of the text messages in Exhibit 23 on Fourth Amendment
grounds. Exhibit 23 is a photograph of Cobb's phone showing the
text message Cobb received from Saunders stating: "'Wipe that
draw off 4 me.'" Cobb, 2013 WL 5744363, at *1. In his initial
statement of Claim One, Cobb states: "Insufficient evidence.
Detective stated in my interview that he obtained a search
warrant to get copy of my text messages. During my trial I
asked my lawyers to get a copy of the search warrant and they
said there wasn't one. Evidence shouldn't have been admitted
into evidence. This is a violation of my 4th [and] 5th
Amendments." (§ 2254 Pet. 6.) The Court fails to discern, and
Cobb fails to explain, why a lack of a search warrant violated
his Fourth Amendment rights. Cobb also never affirmatively
indicates that he asked counsel to move to suppress the evidence
obtained from his phone on the basis that no search warrant was
obtained. Thus, for this reason alone, Cobb fails to
demonstrate any deficiency of counsel or resulting prejudice
from counsel's failure to pursue this challenge. Sanders v.
United States, 373 U.S. 1, 19 (1963) (finding denial of habeas

relief appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations").

Later in his section entitled "Miranda-related Proceedings," in his Points and Authorities in response to the Supplemental Brief in Support of Motion to Dismiss, Cobb mentions his cell phone again. These statements are particularly troubling for the Court because Cobb condenses the timing of events and fails to include pertinent details about Detective Thomas's receipt of Cobb's cell phone. In his Points and Authorities, Cobb suggests that on September 19, 2010, when he voluntarily went to the police station to be interviewed by Detective Thomas, "Thomas demanded petitioner's cell phone and he complied. The battery on the phone was dead and Thomas charged the battery then discovered a text message on it that read, "wipe that draw off for me. Petition[er] during the said events requested counsel but to no avail." (Points and Auth. 2-3.)

Contrary to Cobb's terse provision of the facts, Detective Thomas obtained Cobb's phone on September 14, 2010, when Cobb voluntarily gave Detective Thomas his cell phone. Detective Thomas was interviewing individuals present at the hotel after the shooting and Cobb mentioned to Detective Thomas that he had called 911 to report the shooting. (Dec. 2, 2011 Tr. 35.) Detective Thomas then asked Cobb

> if [he] could look at his cell phone to find out when
> he called 911 to establish a time line when the
> incident occurred, and [Cobb] advised [Thomas] that
> his battery was dead, and then I asked if I could
> charge his phone. I had a charger in my office, could
> I charge it for him, and he said Yes, and he handed me
> his phone. I put it in my pocket, and that was the
> end of our conversation at that time.

(Dec. 2, 2011 Tr. 35-36.) Detective Thomas testified that he

checked Cobb's phone into the property department that evening,

and then retrieved Cobb's cell phone from the property

department the following day, September 15, 2010, around noon.

(Dec. 2, 2011 Tr. 39.) Detective Thomas charged the phone and

he

> [w]ent to go look at [Cobb's] call log to see who
> he had called and what the times were . . . for that
> 911 call and did not see it. I saw a text message
> that he had received. It went to his phone September
> 14th at 10:58 p.m. from a phone number that didn't
> have a name on it, and the contents of the text
> message was "wipe that draw off for me."

(Dec. 2, 2011 Tr. 39.) Detective Thomas indicated that he

photographed the message on the phone, and photographed

information such as the phone number that the message was

received from, the date and time it was received, and when

Detective Thomas opened the message. (Dec. 2, 2011 Tr. 40.)

Thus, the record establishes that Cobb voluntarily provided

Detective Thomas with his cell phone with the understanding that

Detective Thomas was going to review the messages and call log.

Cobb fails to explain why a search warrant was needed when he

willingly gave Detective Thomas the phone.   Based on Cobb's
provision of his phone to Detective Thomas, counsel reasonably
eschewed moving to suppress the phone due to a lack of a search
warrant.   To the extent Cobb even alleges a Fourth Amendment
claim in his § 2254 Petition, counsel cannot be faulted for
failing to raise this claim.

Additionally, the substance of this text message taken from
Cobb's phone was also admitted into evidence in two additional
exhibits.   Thus, if counsel had moved to suppress Exhibit 23 on
Fourth Amendment grounds, the substance of the text message
would still be in evidence.

The Court can quickly dispose of Cobb's Fifth Amendment
challenge to the admission of the text message.   The Fifth
Amendment guarantees that no one may be "compelled in any
criminal case to be a witness against himself . . . ."   U.S.
Const. amend. V.   The Court fails to discern, and Cobb fails to
explain, how the admission of text messages at trial implicated
his Fifth Amendment rights.   These text messages were not
statements made by Cobb to police.   Thus, counsel cannot be
faulted for failing to raise this meritless challenge.

Cobb demonstrates no deficiency of counsel or resulting
prejudice from counsel's failure to object to the admission of
the various sources of the text message.   Accordingly, counsel

24

fails to serve as cause for the default of Claim One. Thus, Claim One is defaulted and will be dismissed.

### 2. Claim Three

In Claim Three, Cobb argues: "Violation of my 6th Amendment. . . . [T]wo jurors should have been dismissed . . . ." (§ 2254 Pet. 9.) He contends that "one of the jurors admitted that she watched a news broadcast at home and it said the defendant's name and something about text messages" and "she stated that she mentioned it to other jurors." (Id.) He further contends that "another juror stated she had locked her keys in the car so she asked the detective for a ride to get lunch, but the detective was a witness for the prosecution." (Id.) Cobb asserts that he "[doesn't] know what was said" but "the two jurors should have been dismissed . . . ." (Id.) In support of his assertion of cause for the default of this claim, Cobb argues that

> counsel was ineffective for failing to impeach the entire jury panel during voir dire by showing a pattern of deception, lies, and perjury by the two jurors through prior off the record testimony that counsel never introduced during voir dire of these two jurors. It is absolutely clear from the record that these two jurors discussed the issue with the rest of the panel which simply meant that they were unworthy of belief.

(Points and Auth. 3-4.) As explained below, Cobb fails to demonstrate any deficiency of counsel or resulting prejudice.

25

First, Cobb's statement that he "[doesn't] know what was said," is patently false as both of the incidents of potential juror misconduct were brought before the Circuit Court and both jurors were questioned.

During voir dire, counsel notified the Circuit Court that he had learned that a potential juror had contact with a witness.  The Commonwealth's Attorney then explained that

> [o]ne of the police officers approached us after lunch and said one of the potential jurors had approached he and another officer because they had keys locked in a car and requesting assistance to get into her car and also for a ride, but someone else ended up giving them a ride, and that was the extent of the contact.   There was no discussion of the case. The officer did not know the name of the juror.

(Nov. 29, 2011 Tr. 60-61.)   The Circuit Court explained that it was "not hearing any need" for an inquiry, but agreed to conduct whatever inquiry counsel thought necessary.   (Nov. 29, 2011 Tr. 61-62.)   The officer identified the potential juror and counsel asked her if "there [was] anything about your interaction with the officer that would cause you not to be able to give a fair or impartial decision in this case?"   (Nov. 29, 2011 Tr. 79.) The potential juror explained:

> No, I asked him if he could help me.   He told me immediately that he was with the same case and that he felt uncomfortable giving me a ride.   I said I'm going to the next-door restaurant to eat, and I got a ride back here with [another potential juror] actually.   We said we didn't want to eat at the same restaurant so we wouldn't hear each other's discussions, and I let the jury coordinator know too, as soon as I got here.

(Nov. 29, 2011 Tr. 79-80.)  Cobb's counsel did not move to strike this juror for cause.

Next, at the beginning of the fourth day of trial, the Court indicated that the "jury clerk has advised me that one of the jurors . . . has come to her and stated that she heard something on the news.  All she heard was the name Cobb and text, and so she immediately left the room, and I don't see that as being a problem, but I would want to bring it to your attention."  (Dec. 5, 2011 Tr. 3.)  The Court decided to question the juror.  (Dec. 5, 2011 Tr. 3-4.)

The juror explained that:  "Yesterday morning on Channel 13 News, I heard something about texts and Cobb, and I ran out of the room into the garage so that I wouldn't hear anything else."  (Dec. 5, 2011 Tr. 4.)  The juror indicated that she mentioned to the other jurors that she "heard text, and [she] heard Cobb, and [she] ran out of the room," but that she "wasn't going to do anything else."  (Dec. 5, 2011 Tr. 4.)  Counsel asked the juror if "any response [was] given to you from the other jurors," and she responded:  "Maybe a comment about, you know, well maybe we'll get this over with or something like that, but as far as anything that was said, no, sir."  (Dec. 5, 2011 Tr. 5.)  Counsel indicated to the Circuit Court that there were no motions based on the juror's answers.  (See Dec. 5, 2011 Tr. 5.)

As the record establishes, both the Circuit Court and counsel appropriately questioned both the potential juror and the juror about whether they had engaged in any misconduct and found none. Cobb vaguely suggests that "counsel was ineffective for failing to impeach the entire jury panel," because he believes the two jurors "discussed the issue with the rest of the panel." (Points and Auth. 3-4.) Presumably, Cobb faults counsel for failing to move for a mistrial based on juror misconduct; however, Cobb fails to indicate on what specific grounds counsel should have made that motion.

Both the potential juror and the juror were candid with the Court about the alleged source of misconduct. After hearing from the jurors, the Court and counsel were satisfied that no actual misconduct had occurred. Cobb fails to allege any specific facts suggesting that either juror was biased or that his jury as a whole was not impartial or on what non-frivolous grounds counsel should have moved for a mistrial. See Stockton v. Virginia, 852 F.2d 740, 747 (4th Cir. 1988) (explaining that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation" (quoting Smith v. Phillips, 455 U.S. 209, 217 (1982))). Thus, Cobb fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to further question the jurors about bias or file a motion for a mistrial. Because counsel rendered no

28

ineffective assistance with regard to Cobb's claim of juror
misconduct, counsel fails to serve as the cause for the default
of this claim.   Accordingly, Claim Three is defaulted and will
be dismissed.

### 3.   Claim Four

Much like Claim One, Cobb's Claim Four has evolved over the
pendency of the action.   In his § 2254 Petition, Cobb argues:
"Violation of my 5th Amendment Rights."   At the police station,
detectives "said I wasn't under arrest, but I was locked in the
room and they said I could've left.   How could I.   I was being
held against my will and I wasn't Mirandize[d] until later."
(§ 2254 Pet. 11.)   As background, Cobb contends that

> Detective called my girlfriend and told her to
> tell me that I could come pick up my phone.   Upon
> arriving the detective asked me to write a statement.
> After that he began questioning me.   He left me in the
> room several times.     I asked could I call my
> girlfriend [and] he wouldn't let me.   I ask[ed] could
> I go smoke a cigarette [and] he wouldn't let me.   So I
> asked could I go to the bathroom [and] I was escorted
> by another detective.

Id.     In his Points and Authorities filed in response to
Respondent's Supplemental Brief in Support of Motion to Dismiss,
Cobb "concedes . . . that counsel raised this issue at trial,
[but] the trial court conducted an inadequate detailed
suppression hearing."   (Points and Auth. 4.)   He also argues
that "appellate counsel failed to raise a significant and
obvious issue," but fails to identify this "issue."   (Id.)

Later, in his "Legal Argument" section, Cobb adds an entirely new component to Claim Four. Cobb, for the first time, claims that "Detective Thomas continued aggressively questioning . . . after he had thrice -- requested a lawyer to be present." (Id. at 6.) Cobb also suggests that "[c]ounsel was keenly aware of this yet fail[ed] to include this information in his motion to suppress." (Id.) The Court finds that Cobb's provision of this new allegation at this late juncture demonstrates a total lack of candor with the Court by Cobb. Cobb had many opportunities to raise this aspect of his claim both in the state court and earlier in this proceeding and failed to do so. Nevertheless, the Court addresses this contention below and finds that it lacks merit.

Counsel moved to suppress Cobb's statements made to Detective Thomas on September 19, 2010, four days after Thomas had spoken with Cobb at the scene of the murder. Detective Thomas called Cobb and asked him to come to the station for an interview, and Cobb agreed. (Aug. 16, 2011 Tr. 9-10.) Counsel argued that

> the interview was conducted essentially in two parts. The first part, [Cobb] was brought in, advised that he was not under arrest, that he was free to leave. It was a much more casual conversation between him and Detective Thomas. He made a number of statements, gave basically his story of the events. There was a break where [Cobb] then did a handwritten statement of what he had just told Detective Thomas, and then after he had completed the handwritten statement, Detective

30

> Thomas returned and then began another round of
> questioning.

(Aug. 16, 2011 Tr. 5.)   Counsel explained that this "second
round of questioning and statements . . . are what we are asking
the Court to suppress" (Aug. 16, 2011 Tr. 5), as Cobb asserted
he was subjected to custodial interrogation without being
advised of his rights under Miranda v. Arizona, 384 U.S. 436
(1966).   (Aug. 16, 2011 Tr. 4, 32-37.)   The Circuit Court
conducted a suppression hearing, and took the matter under
advisement.   (Aug. 16, 2011 Tr. 60.)   The Circuit Court later
determined that Cobb "voluntarily came to the police department,
and there was no physical restraint, knowing during the duration
of time that he was free to leave.   Indeed, the Court took into
consideration the statements made by the police officer that
they wanted him to remain a witness."   (Sept. 8, 2011 Tr. 3.)
The Circuit Court concluded that "a reasonable person would have
been free and felt they were free to leave" and denied the
suppression motion.   (Sept. 8. 2011 Tr. 3.)

    Cobb fails to identify, and this Court fails to discern,
what more counsel should have done after the Circuit Court
denied the motion to suppress his statements.   Cobb even
concedes that the Court, not counsel, erred.   (Points and Auth.
4 (Cobb "concedes . . . that counsel raised this issue at trial,
[but] the trial court conducted an inadequate detailed

suppression hearing."))    Cobb fails to demonstrate any
deficiency or resulting prejudice by trial counsel.

     With respect to his new allegation that he asked for
counsel three times during the interview, Cobb also fails to
demonstrate that counsel rendered ineffective assistance.   Cobb
contends that he asked for counsel, but Detective Thomas ignored
his requests and continued interviewing him.   (Points and Auth.
6-7.)   Cobb vaguely suggests that "[c]ounsel was keenly aware of
this yet fail[ed] to include this information in his motion to
suppress."   (Id. at 6.)

     First, after reviewing the DVD recording of the interview,
the Court fails to discern that Cobb asked for counsel at all,
much less three times.   Counsel cannot be faulted for failing to
raise a claim that lacks a factual basis.   For this reason
alone, Cobb's claim fails.

     Second, Cobb fails to demonstrate that, but for counsel's
purported error in failing to move to suppress his statements on
this ground, the Court would have granted the motion.

          The scope of an accused's right to counsel under
     the Fifth Amendment is bounded by the explicit right
     from which it is derived-namely, the right to be free
     from compelled self-incrimination.   Thus, the Fifth
     Amendment right to counsel arises only in situations
     where the right to be free from compelled self-
     incrimination might be threatened, as, for example,
     where an individual is subjected to custodial
     interrogation by the police.   And it is triggered only
     by "at a minimum, some statement that can reasonably
     be construed to be an expression of a desire for the

32

> assistance of an attorney <u>in</u> <u>dealing</u> <u>with</u> <u>custodial</u>
> <u>interrogation</u> <u>by</u> <u>the</u> <u>police</u>." <u>McNeil v. Wisconsin</u>,
> 501 U.S. 171[, 179], 111 S. Ct. 2204, 115 L. Ed. 2d
> 158 (1991) (emphasis in original).
>      In other words, an accused does not invoke his
> Fifth Amendment right to counsel by requesting the
> assistance of counsel in a context other than
> [custodial] interrogation.

<u>United States v. Melgar</u>, 927 F. Supp. 939, 949-50 (E.D. Va.
1996).  During the suppression hearing, counsel argued that Cobb
was subjected to custodial interrogation without being advised
of his rights under <u>Miranda</u>.  The Circuit Court determined that
Cobb was not subject to custodial interrogation, and thus, his
statements were admissible and no need existed to advise Cobb of
his <u>Miranda</u> rights.  Cobb's new argument, that the interview
should have stopped when he asked for counsel, would have also
failed had counsel moved to suppress his statements on this
ground.  Because the Circuit Court found that Cobb was not
subjected to custodial interrogation, Cobb's argument that he
invoked his right to counsel during the interview would have
failed, because he had no right to counsel at that juncture.
See <u>Melgar</u>, 927 F. Supp. at 950.  Thus, Cobb demonstrates no
prejudice from counsel's failure to raise this line of argument.

     Cobb also vaguely faults appellate counsel for not
"rais[ing] a significant and obvious issue," that the Court
presumes is the denial of his motion to suppress his statements.
(<u>Id.</u> at 4.)

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).

On appeal, appellate counsel argued that the evidence was insufficient to support Cobb's convictions and that "the trial court erred in admitting into evidence records of text messages sent to and received by a particular cellular telephone number." Cobb v. Commonwealth, No. 1526-12-1, 2015 WL 5744363, at *1 (Va.

Ct. App. Oct. 22, 2013). Cobb has not shown that his vague challenge to the denial of his suppression motion has any merit at all. And, he certainly has not shown that his vague claim had more merit than the stronger grounds pursued by counsel. Thus, Cobb establishes no deficiency of counsel or resulting prejudice. Accordingly, the purported deficiency of trial or appellate counsel fails to serve as cause for the default of Claim Four. Claim Four will be dismissed as defaulted.

## IV. CONCLUSION

Accordingly, the Motion to Dismiss will be granted. Cobb's claims and the action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Cobb and counsel of record.

It is so ORDERED.

/s/  *REN*

Date: *August 8, 2016*
Richmond, Virginia

Robert E. Payne
Senior United States District Judge

35